## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEPHEN SMITH, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| ARQULE, INC.,  PATRICK J. ZENNER, TIMOTHY C. BARABE, SUSAN L. KELLEY, RONALD M. LINDSAY, MICHAEL D. LOBERG, WILLIAM G. MESSENGER, RAN NUSSBAUM, PAOLO PUCCI, MERCK SHARP & DOHME CORP., and ARGON MERGER SUB, INC., | ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) | |

### COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.    This action stems from a proposed transaction announced on December 9, 2019 (the "Proposed Transaction"), pursuant to which ArQule, Inc. ("ArQule" or the "Company") will be acquired by affiliates of Merck & Co., Inc.

2.    On December 6, 2019, ArQule's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Merck Sharp & Dohme Corp. ("Parent") and Argon Merger Sub, Inc. ("Merger Sub," and together with Parent, "Merck").  Pursuant to the terms of the Merger Agreement, Merger Sub commenced a tender offer (the "Tender Offer") to purchase all of ArQule's outstanding

common stock for $20.00 per share in cash.  The Tender Offer is set to expire on January 15, 2020.

3.      On December 17, 2019, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of ArQule common stock.

9.      Defendant ArQule is a Delaware corporation and maintains its principal executive offices at One Wall Street, Burlington, Massachusetts 01803.  ArQule's common stock is traded

on the NASDAQ Global Market under the ticker symbol "ARQL."

10.    Defendant Patrick Zenner is Chairman of the Board of the Company.

11.    Defendant Timothy C. Barabe is a director of the Company.

12.    Defendant Susan L. Kelley is a director of the Company.

13.    Defendant Ronald M. Lindsay is a director of the Company.

14.    Defendant Michael D. Loberg is a director of the Company.

15.    Defendant William G. Messenger is a director of the Company.

16.    Defendant Ran Nussbaum is a director of the Company.

17.    Defendant Paolo Pucci is Chief Executive Officer and a director of the Company.

18.    The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19.    Defendant Parent is a New Jersey corporation and a party to the Merger Agreement.

20.    Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of ArQule (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22.    This action is properly maintainable as a class action.

23.    The Class is so numerous that joinder of all members is impracticable.  As of December 5, 2019, there were approximately 120,787,771 shares of ArQule common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24.    Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

28.    ArQule is a biopharmaceutical company engaged in the research and development of targeted therapeutics to treat cancers and rare diseases.

29.    The Company's clinical-stage pipeline consists of four drug candidates, all of which are in targeted, biomarker-defined patient populations.

30.    The Company's pipeline includes: ARQ 531, an orally bioavailable, potent, and reversible dual inhibitor of both wild type and C481S-mutant BTK, in phase 2 for patients with B-cell malignancies refractory to other therapeutic options; miransertib (ARQ 092), a potent and selective inhibitor of the AKT serine/threonine kinase, in a registrational trial with cohorts in Proteus syndrome and PROS; ARQ 751, a next generation highly potent and selective AKT inhibitor, in phase 1 for patients with solid tumors with AKT1 and PI3K mutations; and derazantinib, a multi-kinase inhibitor designed to preferentially inhibit the fibroblast growth factor receptor family, in a registrational trial for iCCA in collaboration with Basilea and Sinovant.

31.    On December 6, 2019, ArQule's Board caused the Company to enter into the Merger Agreement with Merck.

32.    Pursuant to the terms of the Merger Agreement, Merger Sub commenced the Tender Offer to acquire all of ArQule's outstanding common stock for $20.00 per share in cash.

33.    According to the press release announcing the Proposed Transaction:

Merck (NYSE: MRK), known as MSD outside the United States and Canada, and ArQule, Inc. (Nasdaq: ARQL) today announced that the companies have entered into a definitive agreement under which Merck, through a subsidiary, will acquire ArQule for $20 per share in cash for an approximate total equity value of $2.7 billion. ArQule is a publicly traded biopharmaceutical company focused on kinase inhibitor discovery and development for the treatment of patients with cancer and other diseases. ArQule's lead investigational candidate, ARQ 531, is a novel, oral Bruton's tyrosine kinase (BTK) inhibitor currently in a Phase 2 dose expansion study for the treatment of B-cell malignancies. . . .

Under the terms of the acquisition agreement announced today, Merck, through a subsidiary, will initiate a tender offer to acquire all outstanding shares of ArQule. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of ArQule's outstanding shares, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions. Upon the successful completion of the tender offer, Merck's acquisition subsidiary will be merged into ArQule, and any remaining shares of common stock of ArQule will be canceled and converted into the right to receive the same $20 per share price payable in the tender offer. The transaction is expected to close early in the first

quarter of 2020.

BofA Securities acted as financial advisor to Merck in this transaction and Covington & Burling LLP as its legal advisor. Centerview Partners acted as exclusive financial advisor to ArQule and Skadden, Arps, Slate, Meagher & Flom LLP as its legal advisor.

34.    The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.  Section 7.8(a) of the Merger Agreement provides:

> At all times during the Pre-Closing Period, the Company shall not, and shall not authorize or knowingly permit its Representatives to, directly or indirectly (other than with respect to Parent or Merger Sub): (i) solicit, initiate, propose or take any action to knowingly encourage any inquiries or the submission of any proposal or offer that constitutes, or could reasonably be expected to lead to, an Acquisition Proposal or otherwise knowingly facilitate any effort or attempt to make an Acquisition Proposal; (ii) except as otherwise expressly permitted by this Section 7.8(a), enter into, continue or otherwise participate in any discussions or negotiations regarding, furnish to any Third Party any information or data relating to, afford access to the business, personnel, properties, assets, books or records of the Company in connection with, or otherwise cooperate with any Person with respect to, any Acquisition Proposal or any inquiry, proposal or offer that could reasonably be expected to lead to an Acquisition Proposal; (iii) grant any waiver, amendment or release of or under, or fail to enforce, any confidentiality, standstill or similar agreement (or any confidentiality, standstill or similar provision of any other Contract); (iv) enter into any letter of intent, Contract, commitment or agreement in principle with respect to an Acquisition Proposal or enter into any Contract or commitment requiring the Company to abandon, terminate or fail to consummate the Transactions or that would otherwise materially impede the ability of Parent and Merger Sub to consummate the Offer Closing and the Merger; or (v) resolve, propose or agree to do any of the foregoing. . . .

35.    Additionally, the Company must promptly advise Merck of any proposals or inquiries received from other parties.  Section 7.8(b) of the Merger Agreement states:

> The Company shall, as promptly as practicable, and in any event no later than 24 hours after receipt thereof, notify Parent, orally and in writing, of any Acquisition Proposal or any inquiry, proposal or offer that expressly contemplates or could reasonably be expected to lead to an Acquisition Proposal, which notification shall include (i) a copy of the applicable written Acquisition Proposal, inquiry, proposal

or offer (or, if oral, a summary of the material terms and conditions of such Acquisition Proposal, inquiry, proposal or offer) and (ii) the identity of the Third Party making such Acquisition Proposal. The Company shall thereafter keep Parent reasonably informed on a reasonably current basis of the status of, or any material developments, discussions or negotiations regarding, any such Acquisition Proposal, and the material terms and conditions thereof (including any change in price or form of consideration or other material amendment thereto), including by providing a copy of material documentation and summary of communications (which shall include any proposals or offers) relating thereto that is exchanged between the Third Party (or its Representatives) making such Acquisition Proposal and the Company (or its Representatives) within 24 hours after the receipt or delivery thereof.

36.    Moreover, the Merger Agreement contains a restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Merck a "matching right" with respect to any "Superior Proposal" made to the Company.  Section 7.8(d) of the Merger Agreement provides:

Notwithstanding anything in this Agreement to the contrary, at any time during the Pre-Closing Period, the Company Board may effect a Company Adverse Recommendation Change or terminate this Agreement to enter into a Specified Agreement, in each case if, and only if, (i) the Company is not in breach in any material respect of this Section 7.8 in connection with the Superior Proposal or Acquisition Proposal that was a precursor to the Specified Agreement, (ii) the Company Board determines in good faith, after consultation with the Company's outside legal counsel, that the failure to make the Company Adverse Recommendation Change or terminate this Agreement to enter into a Specified Agreement would be inconsistent with the fiduciary duties of the Company Board under applicable Law, (iii) the Company has given Parent written notice of the Company Board's intention to make a Company Adverse Recommendation Change or terminate this Agreement to enter into a Specified Agreement not earlier than 11:59 p.m. New York time on the fifth Business Day after Parent receives such written notice, (iv) if not in connection with an Intervening Event pursuant to Section 7.8(e), the decision to make a Company Adverse Recommendation Change is in connection with an Acquisition Proposal or with the Company's intent to terminate this Agreement to enter into a Specified Agreement, and the Company shall have complied with clauses (1) through (5), as follows: (1) prior to giving effect to clauses (2) through (5), the Company Board shall have determined that such Acquisition Proposal is a Superior Proposal, (2) the Company shall have made available to Parent orally and in writing the material terms and conditions of such Acquisition Proposal and copies of all written communications (and, if oral, a summary of the material terms of such communications) relating to such Acquisition Proposal in accordance with Section 7.8(b), (3) the Company shall have

7

negotiated in good faith with Parent (and caused its Representatives to negotiate with Parent), to the extent that Parent desires to negotiate, during the five Business Day period provided in the foregoing clause (iii) of this Section 7.8(d) with respect to such proposed revisions to this Agreement or other proposals made by Parent, if any, so that the Acquisition Proposal would no longer constitute a Superior Proposal, (4) after considering the results of negotiations with Parent and taking into account the proposals made by Parent, if any, after consultation with its outside legal counsel and a financial advisor of nationally recognized reputation, the Company Board shall have determined in good faith that such Acquisition Proposal remains a Superior Proposal, and, after consultation with its outside legal counsel, that the failure to make the Company Adverse Recommendation Change or terminate this Agreement to enter into a Specified Agreement would be inconsistent with the fiduciary duties of the Company Board under applicable Law and (5) if the Company intends to terminate this Agreement to enter into a Specified Agreement, the Company shall have complied with Section 9.1(d)(i). For clarity, the provisions of this Section 7.8(d) shall also apply to any amendment to the financial terms or any other material amendment to any Acquisition Proposal (except that any reference to five Business Days shall instead be three Business Days) or any successive Acquisition Proposals.

37.     The Merger Agreement also provides for a "termination fee" of $95,300,000 payable by the Company to Merck if the Individual Defendants cause the Company to terminate the Merger Agreement.

***The Solicitation Statement Omits Material Information, Rendering It False and Misleading***

38.     Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

39.     As set forth below, the Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.

40.     First, the Solicitation Statement omits material information regarding the Company's financial projections.

41.     The Solicitation Statement fails to disclose: (i) all line items used to calculate EBIT; (ii) the assumptions underlying the financial projections and the adjustments made to the financial projections; (iii) projected net income; and (iv) a reconciliation of all non-GAAP to GAAP metrics.

42.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

43.     Second, the Solicitation Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Centerview Partners LLC ("Centerview").

44.     With respect to Centerview's Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) Centerview's basis for assuming that unlevered free cash flows would decline in perpetuity after December 31, 2036 at a rate of free cash flow decline of 80.0% year-over-year; and (ii) the individual inputs and assumptions underlying the range of discount rates from 11.0% to 13.0%.

45.     With respect to Centerview's analysis of stock price targets, the Solicitation Statement fails to disclose: (i) the price targets observed by Centerview in the analysis; and (ii) the sources thereof.

46.     With respect to Centerview's analysis of premiums paid, the Solicitation Statement fails to disclose the premiums paid in the transactions observed by Centerview in the analysis.

47.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

48.     Third, the Solicitation Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications.

49.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

50.     Fourth, the Solicitation Statement fails to disclose the nature of the services Centerview provided to Merck and its affiliates in connection with "other matters unrelated to the Transactions."

51.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

52.     The omission of the above-referenced material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: The Solicitation or Recommendation.

53.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### (Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)

54.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55.     Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

56.    Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

57.    The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

58.    The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

59.    By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

60.    The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

61.    Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

62.    By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

63.    Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

64.    Plaintiff and the Class have no adequate remedy at law.

## COUNT II

### (Claim for Violation of 14(d) of the 1934 Act Against Defendants)

65.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66.     Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

67.     Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

68.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

69.     Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

70.     The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

71.     Plaintiff and the Class have no adequate remedy at law.

**COUNT III**

**(Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants and Merck)**

72.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

73.     The Individual Defendants and Merck acted as controlling persons of ArQule within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as directors of ArQule and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

74.     Each of the Individual Defendants and Merck was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

75.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly connected with and involved in the making of the Solicitation Statement.

76.     Merck also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or

13

misrepresented in the Solicitation Statement.

77.    By virtue of the foregoing, the Individual Defendants and Merck violated Section 20(a) of the 1934 Act.

78.    As set forth above, the Individual Defendants and Merck had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

79.    As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

80.    Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief as follows:

A.    Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.    Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.       Granting such other and further relief as this Court may deem just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury.

Dated: January 2, 2020                            **RIGRODSKY & LONG, P.A.**

                                    By:   */s/ Gina M. Serra*
                                          Brian D. Long (#4347)
                                          Gina M. Serra (#5387)
                                          300 Delaware Avenue, Suite 1220
                                          Wilmington, DE 19801
                                          Telephone: (302) 295-5310
                                          Facsimile: (302) 654-7530
                                          Email: bdl@rl-legal.com
                                          Email: gms@rl-legal.com

                                          *Attorneys for Plaintiff*